## LEWELLYN, FORMER. COLLECTOR OF INTERNAL REVENUE, *v.* FRICK ET AL.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF PENNSYLVANIA.

No. 681. Argued April 16, 1925.—Decided May 11, 1925.

1. Acts of Congress are to be construed, if possible, so as to avoid grave doubts of their constitutionality. P. 251.
2. The provisions of the Revenue Act of February 24, 1919, purporting to include policies insuring the life of a decedent in the

gross value of his estate as a basis for fixing the transfer tax thereon, though the policies be payable to beneficiaries other than the estate, and allowing the executor to recover from such beneficiaries their proportions of such tax and making them personally responsible therefor if not paid when due, are to be construed as inapplicable to transactions antedating the passage of the act.  P. 251.

3. A declaration in an act that a provision in it shall be retroactive helps the conclusion that the same provision in an earlier act, lacking such declaration, was not retroactive.  P. 252.

298 Fed. 803, affirmed.

ERROR to a judgment recovered in the District Court by the defendants in error in an action to recover the amount of taxes collected by duress.

*Mr. James A. Fowler,* Special Assistant to the Attorney General, with whom the *Solicitor General, Messrs. Nelson T. Hartson* Solicitor of Internal Revenue, and *Merrill E. Otis,* Special Assistant to the Attorney General, were on the briefs, for plaintiff in error.

Section 402 (f) of the Revenue Act of 1918 provides a reasonable measure of an excise tax imposed upon a transmission of a decedent's property by death.  The tax is not a direct tax but an excise measured by the value of the net estate.  *New York Trust Co.* v. *Eisner,* 256 U. S. 345; *Greiner* v. *Lewellyn,* 258 U. S. 384; *Edwards* v. *Slocum,* 264 U. S. 61; *Y. M. C. A.* v. *Davis,* 264 U. S. 47; *United States* v. *Woodward,* 256 U. S. 632.  Congress has provided a measure for that tax based not solely upon the transfer of the decedent's property, but upon transactions, whether transfers from a decedent or not, which accomplished the same results as testamentary dispositions would accomplish.  *Pennsylvania Company* v. *Lederer,* 292 Fed. 629; *McElligott* v. *Kissam,* 275 Fed. 545; *Farmers' Loan & Trust Co.* v. *Winthrop,* 238 N. Y. 488.  A measure which bears a reasonable relation to the subject matter of the tax is constitutional although the

property affording the measure could not itself be taxed. *Maxwell* v. *Bugbee,* 250 U. S. 525; *Flint* v. *Stone Tracy Co.* 220 U. S. 107; *Greiner* v. *Lewellyn, supra; Plummer* v. *Coler,* 178 U. S. 115; *United States* v. *Perkins,* 163 U. S. 625; *Orr* v. *Gilman,* 183 U. S. 278; *Bullen* v. *Wisconsin,* 240 U. S. 625. The measure of the tax bears a reasonable and proper relation to the occasion of the tax. *Penn Mutual Life Ins. Co.* v. *Lederer,* 252 U. S. 523.

It can hardly be questioned that a deposit by A in a Savings Bank to be paid with accumulations to B on A's death would constitute a gift intended to take effect in possession or enjoyment at or after A's death, and therefore be properly included in A's gross estate under § 402 (c) of the Act. *Shukert* v. *Allen,* 300 Fed. 754. Differences between a savings deposit and the taking out of a life insurance policy on one's own life for the benefit of another, are superficial, when used to differentiate such a contract from a gift intended to take effect in possession or enjoyment at or after death. It is, of course, true that the beneficiary has a vested interest in the policy. But the ownership of the policy as such is worthless. Its only value is the assurance that at the death of the insured a certain sum will be paid. There is no true " possession or enjoyment " of a policy. The possession or enjoyment attaches when, and only when, the money is paid. It is held that gifts are taxable, regardless of the vesting of title or of the right to future enjoyment, if the actual enjoyment of the property which comprised the present right to the earnings, income, and avails thereof is postponed until the donor's death. *People* v. *Kelley,* 218 Ill. 509; *Re Cornell,* 170 N. Y. 423; *State* v. *Probate Court,* 102 Minn. 268; *American Bd. Comm'rs* v. *Bugbee,* 98 N. J. L. 84, 118 Atl. 700; *People* v. *Shaffer,* 291 Ill. 142; *People* v. *Danks,* 289 Ill. 542; *In re Felton's Estate,* 176 Cal. 663; *Harber* v. *Whelchel,* 156 Ga. 601.

Assuming for the purposes of argument that the transfer of title to the insurance policies is the subject of the

tax, the act is not unconstitutional. *New York Trust Co.* v. *Eisner, supra; Knowlton* v. *Moore, supra; Cahen* v. *Brewster,* 203 U. S. 543; *Stockdale* v. *The Insurance Companies,* 20 Wall. 323; *Billings* v. *United States,* 232 U. S. 261; *Magoun* v. *Ill. Trust & Sav. Bank,* 170 U. S. 283; *Flint* v. *Stone Tracy Co.,* 220 U. S. 107, 145, 158, 169; *Keeney* v. *New York,* 222 U. S. 525, 536. The provisions effecting the collection of the tax do not affect its nature or render the act unconstitutional. There is nothing to indicate that any change in the nature of the tax was contemplated; none of the sections concern the imposition of the tax; they are merely details deemed proper for the effectual and practical operation of the law. *Flint* v. *Stone Tracy Co., supra; In re Inman's Estate,* 101 Ore. 182, 199 Pac. 615. The matter of who pays the tax is not primarily important. It is a matter which does not concern the Government. *New York Trust Co.* v. *Eisner, supra; Edwards* v. *Slocum,* 264 U. S. 61.

State cases holding retroactive excise laws unconstitutional are not in point. In the first place, such cases are decided under constitutional restrictions applicable to States but not to Congress. A State may not so legislate, whether in the form of taxation or otherwise, as to impair a vested right. To do so is to violate the constitutional limitations which prohibit the State from impairing the obligations of a contract. It is doubtful that this limitation prevents the imposition of a retroactive excise by a State. *Nickel* v. *Cole,* 256 U. S. 222. Certainly there is no such limitation upon the power of Congress. Its power to tax is exhaustive, and if the imposition be a tax, then, although it impair the obligations of contracts or interfere with vested rights, it is, neverthless, valid. *License Tax Cases,* 5 Wall. 462; *United States* v. *Singer,* 15 Wall. 111; *Knowlton* v. *Moore, supra; Patton* v. *Brady,* 184 U. S. 608; *Mc Cray* v. *United States,* 195 U. S.

27; *Flint* v. *Stone Tracy Co., supra; Billings* v. *United States, supra; Brushaber* v. *Union Pac. R. R. Co.* 240 U. S. 1; *United States* v. *Doremus*, 249 U. S. 86.

The statute by its expressed words does not tax the transfer of policies. Furthermore, neither the policies nor their value are included in the gross estate. Their transfer, issuance, or assignment are entirely immaterial. What is included is the "amount receivable"—the money. Regardless of who owned the policies at the date of Mr. Frick's death, the moneys received were in substance the decedent's money, for it was the decedent's money that purchased the right to receive them, and that right was contingent upon the decedent's death. The amounts thus received were included under the statute, whether received by the beneficiaries or by the estate, the only difference being that when received by beneficiaries a part is exempt. The correct theory is that the decedent makes a gift, not of the policy but of his money (invested in insurance, it is true), and the gift is not complete until the money is received. For the purpose of measuring or levying a tax upon the transfer of the net estate, the moneys received by Mrs. and Miss Frick were a part of the Frick estate. They were accumulated or purchased by Henry C. Frick in his lifetime. The right to their possession and enjoyment was generated by his death precisely the same as the right to possession and enjoyment of a trust estate created by a testator to take effect upon his death is so generated. One can not receive money or property unless another part with it. A receipt is a part of a transfer. These moneys were in fact transferred after and because of Mr. Frick's death from the insurance companies to his wife and daughter. The statute does not say when the transfer shall occur, or from and to whom the moneys or property shall pass. It certainly does not contemplate that it shall pass from the decedent at the moment of and because of his death.

True, the transfer mentioned is that of the estate of the decedent, but the decedent's estate is that which is made up of the elements expressly designated in the statute. *Knowlton* v. *Moore, supra.* The tax is levied on neither the policies nor their value, nor the moneys received under the insurance contracts. It is levied " upon the transfer of the net estate," and the generating cause—the cause which justifies the tax and to which it is attached—is the death of the decedent.

The provision of the act of 1918 (40 Stat., chap. 18, sec. 402(f), p. 1098) applies to the proceeds of policies issued before the passage of the act. *Shwab* v. *Doyle,* 258 U. S. 529; *Union Trust Co.* v. *Wardell,* 258 U. S. 537. It certainly can not be insisted with reason that the proceeds of policies issued before the enactment of the statute and made payable to the executors were not intended to be included in the gross estate. That being true, the date of the issuance of the policy is immaterial; the determinative event is when the money is received. . The requirements that there shall be included in the gross estate the amounts received by the executors as insurance and those received as insurance " by all other beneficiaries " in excess of $40,000, are in the same sentence, and there is not a word in the provision which contains a suggestion that a different rule was intended to be observed as to the two classes of funds derived from insurance. In fact, if the provision does not apply to insurance policies issued before the passage of the act, it could have had but little practical effect for a number of years after its passage. Such a construction would practically postpone for years its going into effect. Policies are issued only to those who are physically fit and have a long expectancy of life, and but few policies mature within the early years after their issuance.

There are two lines of cases relating to the modification of the language of legislative acts by subsequent

legislation. The one line proceeds upon the theory that Congress intended to include a *casus omissus* from the previous act, and the other upon' the theory that Congress intended to remove any doubt that might otherwise exist as to the inclusion of the case in the previous act. Apparently the distinction between the two lines of decisions is this: If the inserted word change the meaning of the language of' the previous statute, or add something thereto when construed according to the obvious and usual meaning of its language, it will then be assumed that the inserted words were intended as an amendment; but if the words inserted accord with the plain and obvious meaning of the language of the previous statute, they are taken to define and make more certain its meaning. *Bailey* v. *Clark,* 21 Wall. 284; *Johnson* v. *So. Pac. Co.* 196 U. S. 1; *Wetmore* v. *Markoe,* 196 U. S. 68; *United States* v. *Coulby,* 251 Fed. 982; *Matter of Reynolds' Estate,* 169 Cal. 600; *Abstract & Title Guaranty Co.* v. *State,* 173 Cal. 691.

*Mr. George B. Gordon,* with whom *Messrs. John G. Buchanan, Miles H. England,* and *S. G. Nolin,* were on the briefs, for defendants in error.

The policies were property belonging, not to Mr. Frick's estate, but to the beneficiaries. *Tyler, Administratrix,* v. *Treasurer and Receiver General,* 226 Mass. 306; *Elliot's Appeal,* 50 Pa. 75; *Anderson's Estate,* 85 Pa. 202; *Matter of the Transfer Tax upon the Estate of Andrew Carnegie,* 203 App. Div. (N. Y.) 91; *Neary* v. *Metropolitan Life Ins. Co.* 103 Atl. 661, (Conn. 1918); *Holden* v. *Insurance Co.* 77 So. Car. 299; *Matter of Parson's Estate,* 102 N. Y. Supp. 168; *In re Voorhee's Estate,* 193 N. Y. Supp. 168; *Lloyd* v. *Royal Union Mutual Life Ins. Co.* 245 Fed. 162. See especially *Washington Central Bank* v. *Hume,* 128 U. S., 195.

The reservation of a power by the donor which was never exercised does not affect the vesting of the estate

in the donee. *Jones* v. *Clifton,* 101 U. S. 225; *Matter of the Transfer Tax upon the estate of Andrew Carnegie, supra; Matter of Miller,* 236 N. Y. 290; *Dolan's Estate,* 279 Pa. 582. An attempt was made in the court below to show that the existence of these options and powers, which were never exercised, prevented the "estate" from vesting in the beneficiary. We are at a loss to see what application this contention has to the case; for it is the estate of the beneficiary that is being taxed here. That estate, whether you call it vested or contingent, came into being when the contract which created the obligation to pay the policy to the beneficiary was made, and continued unmodified by the exercise of options or powers right down to the death of the insured, when the policy became payable at once to the owner of the estate. It is perfectly clear that Mr. Frick's so-called rights were no " conditions of the vesting of the estate " (if we must use this inaccurate expression) but were simply conditional limitations. In authorities as old as Littleton we find the illustration that an estate to A if he returns from Rome is a conditional estate. It does not vest any right in him until and unless he returns from Rome; but an estate to A until B returns from Rome is a vested estate in A. It is simply a conditional limitation upon, not a conditional vesting of the estate. *Bennett* v. *Robinson,* 10 Watts, 348; *Irvine* v. *Sibbetts,* 26 Pa. 477; *Cooper* v. *Pogue,* 92 Pa. 254; *McArthur* v. *Scott,* 133 U. S. 340; *Girard Trust Co.* v. *McCaughn,* 3 Fed. (2d), 618. Mrs. Frick's right (estate) became her property (vested) when the policy was issued or the assignment thereof was made, and could only be divested by a subsequent event (the failure to pay a premium, or the exercise of a power), which never happened. In this connection it is well to bear in mind that the beneficiaries had the right to pay the premiums and thus to prevent the policies from lapsing.

Neither these insurance policies nor the assignments thereof comply with the requirements of the Pennsyl-

vania statute on wills; therefore they are not wills. An insurance policy is the antithesis of a will. It is primarily and fundamentally a provision for his dependents, made by a man in his lifetime. It is, as we have shown, their property both by form of contract and by statute, and the proceeds of the policy are not subject to the financial vicissitudes of the insured. It is not a part of his estate; it is not liable for his debts; it does not pass under his will; nothing new vests in the beneficiaries by reason of the insured's death.

The assessment of this tax under the provisions of § 402 (f) of the Revenue Act of 1918 was illegal because that section of the act is not retroactive. In addition to what for all other purposes is regarded as constituting a decedent's estate, this act includes in the gross estate, as it defines it, certain items of property which, though not unconnected with the past activities of the decedent's lifetime, are not at the time of his death part of his estate for the payment of debts, or for distribution, or for any other than the artificial purpose of determining the tax in accordance with the language of the act. Those items are: (1) gifts and trusts made by the decedent in contemplation of death, or to take effect at death; (2) property conveyed to the decedent and some other person and held by them at the time of the decedent's death as joint tenants or tenants by the entireties, with the right of survivorship; (3) policies of life insurance taken out by the decedent on his own life and made payable to persons other than the decedent's executors. The three provisions of the Act which accomplish this extraordinary classification of property are very similar in their terms and are identical in the fact that, as originally enacted, they did not contain any language that required them to have a retrospective application. They contained no hint that they were to be applied to any trusts, gifts, entireties, or life insurance poli-.

cies other than those made after the passage of the Act. This is the natural meaning of the language used. And that such was the meaning that Congress actually had in mind when it enacted the statute is shown by the fact that since the provisions were originally enacted Congress has from time to time added to one or another of the clauses language making it retroactive, until finally in the Act of 1924 it introduced language making them all retroactive. But this is not all. The first two of the three original provisions have already been passed upon by this Court and have been construed not to be retroactive. *Shwab* v. *Doyle,* 258 U. S. 259; *Union Trust Co.* v. *Wardell, Id.* 537; *Levy* v. *Wardell, Id.* 542; *Knox* v. *McElligott, Id.* 546.

By making subdivision (g), the language of which is exactly the same as that of subdivision (f) of § 402 of the Acts of 1918 and 1921, applicable to all transfers, etc., made before the enactment of the Act of 1924, Congress conceded that the language of the earlier acts did not apply to the proceeds of policies taken out before this Act went into effect. *Shwab* v. *Doyle, supra; Smietanka* v. *First Trust & Savings Bank,* 257 U. S. 602; *United States* v. *Field,* 255 U. S. 257. The conclusion that the provisions of § 402 (f) are not applicable to the proceeds of insurance policies taken out and assigned long before this Act was passed is further supported by numerous decisions in this and other courts holding, as was held in *Shwab* v. *Doyle, supra,* that tax laws are to be strictly construed in favor of the taxpayer. *United States* v. *Merriam,* 263 U. S. 179; *Gould* v. *Gould,* 245 U. S. 151; *Eidman* v. *Martinez,* 184 U. S. 578. See *Reynolds* v. *McArthur,* 2 Pet. 417, 434. An established practice of this Court is to avoid giving to a statute a construction which involves constitutional difficulties. *Panama R. R. Co.* v. *Johnson,* 264 U. S. 375.

Even though it be deemed that the Act was intended by Congress to be retroactive, the tax was illegally levied

(a) because such a tax is a direct tax and (b) because it is not due process of law. A retroactive tax is not an excise tax but a direct tax requiring apportionment, since a tax cannot be an excise unless " the element of absolute and unavoidable demand is lacking." *Thomas* v. *United States,* 192 U. S. 363, 371; *Flint* v. *Stone Tracy Co., supra; Singer* v. *United States,* 15 Wall. 111, 120; *Patton* v. *Brady,* 184 U. S. 608, 623. The tax must therefore be either a direct tax upon the person, imposed by reason of his past acts, or a direct tax upon the property transferred. It is a direct property tax within the definitions adopted in: *Pollock Case,* 157 U. S. 429; *Dawson* v. *Kentucky Distilleries Company,* 255 U. S. 288. *Eisner* v. *Macomber, supra; Nicol* v. *Ames,* 173 U. S. 509; *In re Pell,* 171 N. Y. 48.

A tax in any form, imposed upon the creation or transfer of property rights at a time long past, is in substance not a tax but an imposition so arbitrary and unreasonable as to amount to a confiscation of property within the prohibition of the Fifth Amendment. *Brushaber* v. *Union Pacific R. R. Co.* 240 U. S. 1; *Child Labor Tax Case,* 259 U. S. 20; *Hill* v. *Wallace,* 259 U. S. 44.

The Constitution requires duties, imposts and excises to be uniform throughout the United States, Art I, §. 8. *United States* v. *Singer,* 15 Wall. 111.

It was not due process of law to compel the executors to pay an estate transfer tax on property which was not part of the decedent's estate, but which belonged to others. Such a tax is unconstitutional because—(1) It is unequal; it is a deprivation of property without due process of law. (2) The remedy over sought to be given to the executors against the beneficiaries is inadequate, (a) Because a mere cause of action to recover is not the equivalent to immunity from taxation; and (b) Because the act attempts to give the right to recover only a part of the amount which the estate has to pay. That the

tax is an excise tax founded upon the termination of Mr. Frick's title has been expressly held by this court in cases involving the application of that act. *Y. M. C. A.* v. *Davis,* 264 U. S. 47; *Edwards* v. *Slocum,* 264 U. S. 61. See *Knowlton* v. *Moore,* 178 U. S. 41.

Our proposition that you cannot include in the value of the taxable thing the value of some other thing is a fundamental point in the following cases: *Pullman's Palace Car Co.* v. *Pennsylvania,* 141 U. S. 18; *Delaware, L. & W. R. R. Co.* v. *Pennsylvania,* 198 U. S. 341; *Union Refrigerator Co.* v. *Kentucky,* 199 U. S. 194; *Sou. Pac. Co.* v. *Kentucky,* 222 U. S. 63; *Wallace* v. *Hines,* 253 U. S. 66; *Air-Way Corp.* v. *Day,* 266 U. S. 71; *Wardell* v. *Blum,* 276 Fed. 226; *Chanler* v. *Kelsey,* 205 U. S. 466. A tax cannot be made the means of imposing upon one man the burden which should be borne by another. *United States* v. *B. & O. R. R. Co.,* 17 Wall. 322; *Knowlton* v. *Moore, supra; Loan Association* v. *Topeka,* 20 Wall. 655.

Messrs. *Ira J. Williams Jr., A. Carson Simpson, Ira J. Williams* and *Francis Shunk Brown; Isaac B. Lipson; Frederick Geller* and *Russell L. Bradford; William B. Sears* and *Alexander Lincoln; Tyson S. Dines, Peter H. Holme, Harold D. Roberts* and *Charles E. Works;* and *William Marshall Bullitt,* filed briefs as *amici curiae,* by special leave of court.

Mr. Justice Holmes delivered the opinion of the Court.

This is a suit by the executors of Henry C. Frick to recover the amount of taxes collected by duress under the supposed authority of the Revenue Act of February 24, 1919, c. 18; 40 Stat. 1057, on the ground that the Act is unconstitutional so far as it purports to tax the matters here concerned. The District Court gave judg-

ment for the plaintiffs for the whole sum demanded. 298 Fed. 803. The case was tried without a jury and the Court adopted as its findings among others the following facts which were agreed: Henry C. Frick died on December 2, 1919, and his will was admitted to probate on December 6. There were outstanding policies upon his life, four payable to his wife and seven to his daughter. The total amount received under them was $474,629.52, and as his estate apart from this was more than ten million dollars, an additional tax of $108,657.88, or twenty-five per cent. of the sum received less the statutory deduction of $40,000, was required to be paid. All the policies were taken out before the Revenue Act was passed. The largest one, for $114,000 dollars, was a paid-up policy issued in 1901, payable to Mrs. Frick without power in Mr. Frick to change the beneficiary. Another, similar so far as material, was for $50,000. Others were assigned or the beneficiary named (Frick's estate) was changed to Frick's wife or daughter before the date of the statute. All premiums were paid by Mr. Frick, and some seem to have been paid after the statute went into force.

The tax imposed by the Act is, a tax 'upon the transfer of the net estate' of the decedent. § 400; 40 Stat. 1096. 'For the purpose of the tax the value of the net estate shall be determined' by deducting certain allowances from the gross estate. § 403. By § 402 "the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property . . . (f) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life." These last words are the ground of the Collector's claim.

By § 408; 40 Stat. 1100, "If any part of the gross estate consists of proceeds of policies of insurance upon the life of the decedent receivable by a beneficiary other than the executor, the executor shall be entitled to recover from such beneficiary such portion of the total tax paid as the proceeds, in excess of $40,000, of such policies bear to the net estate." By § 409 a personal liability is imposed upon the beneficiaries if the tax is not paid when due. The defendants in error say that if these policies are covered by the statute these sections show that the beneficiaries are taxed upon their own property, under the guise of a tax upon the transfer of his estate by Mr. Frick, and that this is taking their property without due process of law, citing *Matter of Pell,* 171 N. Y. 48, and other cases. In view of their liability the objection cannot be escaped by calling the reference to their receipts a mere measure of the transfer tax. The interest of the beneficiaries is established by statutes of the States controlling the insurance and is not disputed. It also is strongly urged that the tax would be a direct tax. In view of our conclusion it is not necessary to state the position of the defendants in error more in detail.

We do not propose to discuss the limits of the powers of Congress in cases like the present. It is enough to point out that at least there would be a very serious question to be answered before Mrs. Frick and Miss Frick could be made to pay a tax on the transfer of his estate by Mr. Frick. There would be another if the provisions for the liability of beneficiaries were held to be separable and it was proposed to make the estate pay a transfer tax for property that Mr. Frick did not transfer. Acts of Congress are to be construed if possible in such a way as to avoid grave doubts of this kind. *Panama R. R. Co. v. Johnson,* 264 U. S. 375, 390. Not only are such doubts avoided by construing the statute as referring only

to transactions taking place after it was passed, but the general principle "that the laws are not to be considered as applying to cases which arose before their passage" is preserved, when to disregard it would be to impose an unexpected liability that if known might have induced those concerned to avoid it and to use their money in other ways. *Schwab* v. *Doyle,* 258 U. S. 529, 534. This case and the following ones, *Union Trust Co.* v. *Wardell,* 258 U. S. 537, *Levy.* v. *Wardell,* 258 U. S. 542, and *Knox* v. *McElligott,* 258 U. S. 546, go far toward deciding the one now before us. They also indicate that the Revenue. Act of 1924, c. 2, § 302(h); 43 Stat. 250, 305, making (g) (the equivalent of (f) above) apply to past transactions, does not help but if anything hinders the Collector's construction of the present law. *Smietanka* v. *First Trust & Savings Bank,* 257 U. S. 602.

*Decree affirmed.*