MAY BILLINGS AND CITY BANK FARMERS TRUST COMPANY, AS EXECUTORS OF THE LAST WILL AND TESTAMENT OF RICHARD BILLINGS, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 81638. Promulgated May 27, 1937.

*Russell L. Bradford*, *Esq.*, and *James D. Ouchterloney*, *Esq.*, for the petitioners.

*Lewis S. Pendleton*, *Esq.*, for the respondent.

# 1150

OPINION.

SMITH: The first question presented by this proceeding is whether the proceeds of 32 life insurance policies which were paid to May Billings, the beneficiary, in the amount of $538,462.43 formed a part of the gross estate of the decedent. The decedent had the right to change the beneficiary of these policies up to the date of death. Petitioners have made no argument, either orally or written, in support of their contention upon this point. This Board and the courts have long held that, regardless of the date on which the policies were taken out, the proceeds of insurance on a decedent's life are properly includable in his gross estate where he has retained until his death the power to change the beneficiaries. *Chase National Bank* v. *United States*, 278 U. S. 327; *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339; *Heiner* v. *Grandin*, 44 Fed. (2d) 141; certiorari denied, 286 U. S. 561; *H. T. Cook et al., Executors*, 23 B. T. A. 335; affd., 66 Fed. (2d) 995; *Jacob K. Newman et al., Executors*, 29 B. T. A. 53; and *Louise C. Moore, Executrix*, 33 B. T. A. 108. The proceeds of these 32 policies constituted a part of the gross estate of the decedent.

With regard to the policies referred to as items 63, 64, and 66 of the estate tax return, the petitioners contend that, inasmuch as these policies were taken out before the effective date of the Revenue Act of 1918 (February 24, 1919) and were made payable to an irrevocably named beneficiary, they may not be included in the gross estate. The petitioners cite *Bingham* v. *United States*, 296 U. S. 211, and *Industrial Trust Co.* v. *United States*, 296 U. S. 220, in support of this contention. The cited cases stand for the proposition that where insurance policies were taken out prior to the effective date of the Revenue Act of 1918 and prior to such date the decedent had no

interest in the policies such as the right to change the beneficiary, or to borrow money on the policies, or to surrender them without the consent of the beneficiary, the proceeds of the policies are not subject to Federal estate tax.

In *Industrial Trust Co.* v. *United States, supra*, the facts were that the decedent died in 1930. He had taken out a policy in 1892, the proceeds of which were payable to the wife of the decedent as sole beneficiary if living, and, if not living, to the surviving children of the decedent. In 1912 the policy became a paid-up policy, requiring no further payment of premiums. No power was reserved to change beneficiaries, borrow on the policy, or surrender it. The Court stated:

> The case of *Lewellyn* v. *Frick*, 268 U. S. 238, 45 S. Ct. 487, 69 L. Ed. 934, arose under the Revenue Act of 1918. This case arises under the Act of 1926, § 302 (g), 26 USCA § 411 (g), which is the same as section 402 (f) of the former act (40 Stat. 1097). Subdivision (h) of the 1926 Act, 26 USCA § 411 (h), however, provides that subdivisions (b), (c), (d), (e), (f), and (g) shall apply to "transfers, trusts, estates, interests, rights, powers, and relinquishment of powers, as severally enumerated and described therein, whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this Act [February 26, 1926]." Whether any of these terms apply to an amount receivable by a beneficiary, under a policy such as we have here, is fairly debatable. See *Wyeth* v. *Crooks* (D. C.) 33 F. (2d) 1018, 1019. If any of them do apply, the provision is open to grave doubt as to its constitutionality, and the rule of the *Frick* case controls.

The respondent contends that the above cited decisions are not determinative of the present issue, since the decedent retained:

> * * * until his death powers of control over the economic benefits thereof sufficient to support the tax. In the Bankers Life Company policy and the Fidelity Mutual policy the decedent had the power during his lifetime to direct that the proceeds should be retained by the company during the life of the beneficiary and upon the latter's death to be paid over to the executor or administrator of the beneficiary. In all three of the policies the decedent had the power to direct payment of the proceeds in fixed annual installments or in installments during the lifetime of the beneficiaries based upon his or her life expectancy and to deprive the beneficiary of any right to commute these annual installments for cash. * * *

Section 302 of the Revenue Act of 1926 provides in part:

> SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—
>
> *        *        *        *        *        *        *
>
> (c) To the extent of any interest therein of which the decedent has at any time made a transfer, * * * in contemplation of . * * * his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *
>
> *        *        *        *        *        *        *

, (g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.

(h) Except as otherwise specifically provided therein subdivisions (b), (c), (d), (e), (f), and (g) of this section shall apply to the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers, as severally enumerated and described therein, whether made, created, arising, existing, exercised, or relinquished before or after the enactment of this Act.

The incidence of the estate tax is upon the value of the net estate of the decedent which passes by reason of his death. In the determination of that value it is provided that there shall be included in the gross estate the value at the time of death of all property, real or personal, tangible or intangible, wherever situated, to the extent of the decedent's interest therein. Where the decedent has the right to change the beneficiary of a policy or to surrender the policy without the consent of the beneficiary he has a valuable interest in the policy which may properly be included in the gross estate. *Chase National Bank* v. *United States, supra.* The inclusion in the gross estate of the proceeds of life insurance policies was sustained in the *Chase National Bank* case upon the theory that the decedent up to the date of death had control of the insurance to the extent that he could name the beneficiary. The Court stated:

\* \* \* As it is the termination of the power of disposition of the policies by decedent at death which operates as an effective transfer and is subjected to the tax, there can be no objection to measuring the tax or fixing its rate by including in the gross estate the value of the policies at the time of death, together with all the other interests of decedent transferred at his death. \* \* \*

In the proceeding at bar the decedent did not have such an interest. The mere right to say when the proceeds of the insurance policies should be paid to the beneficiary does not amount to a control of the proceeds. They irrevocably belonged to the beneficiary from the date the policies were taken out.

We are of the opinion that the proceeds of these policies did not constitute a part of the gross estate of the decedent.

The third question presented by this proceeding is whether the proceeds of the three policies issued by the Missouri State Life Insurance Co. should be included in the gross estate of the decedent. These policies were payable to the estate of the decedent, with the right in the decedent to change the beneficiary. He assigned these policies to named persons on June 24, 1931, or within six months from the date of death. The respondent held that the assignment was in contemplation of death. At the time the decedent was suffering from a chronic cardiac valvular disease. The petitioners have

offered no evidence to show that the assignment was not made in contemplation of death. We accordingly hold that they were so assigned.

Each assignment states that it is made "for value received." The determination of the respondent was, however, to the effect that there was no consideration paid by the assignees for the assignments of the policies and in the absence of proof to the contrary it must be held that they were assigned without consideration.

The petitioner's argument upon this point is that insurance policies on the life of a decedent, payable to the insured's estate but with the right on the part of the insured to change the beneficiary, which are assigned to named persons without consideration in contemplation of death, may not be included in the gross estate under section 302 (c) of the Revenue Act of 1926; that insurance policies on the life of a decedent are includable in the gross estate by virtue of subdivision (g) of section 302 and may not be included by virtue of any other subdivision; and that the term "assignee" is not comprehended by the phrase "all other beneficiaries" contained in subdivision (g). In support of the last proposition the petitioners cite *Guettel* v. *United States*, 67 Ct. Cls. 613.

The decedent unquestionably had a valuable property right in the Missouri State Life Insurance Co. policies up to the time that they were assigned by him to named persons on June 24, 1931. Section 302 (c) covers all kinds of property owned by a decedent. We are of the opinion that there is no merit in the contention of the petitioners that life insurance policies on the life of a decedent may not be included in the gross estate when assigned without consideration to named persons in contemplation of death. If this were so, it would be possible for an insured to assign policies of life insurance payable to his estate in contemplation of death and thereby eliminate the proceeds of the policies from his gross estate. We are of the opinion that such a construction of the statute is not tenable.

In *Guettel* v. *United States, supra,* a policy was taken out in 1920 payable to the estate of the decedent. On March 25, 1920, the decedent assigned this policy to his wife. The Court of Claims in its opinion states that the assignment was for a valuable consideration, although it has made no finding to that effect. The court held, however, that it could not be included in the gross estate, saying:

The language *"all other beneficiaries,"* used in the statute, can not be fairly construed as applying to the *assignee* of a policy payable to a designated beneficiary. Such a construction would be an unwarranted extension of the meaning of the statute here involved. * * *

We find ourselves in disagreement with this proposition. It appears to us that the phrase "all other beneficiaries" contained in

subdivision (g) is broad enough to include an assignee where the policy was assigned to a named person or persons without a valuable consideration.

In *Frick* v. *Lewellyn*, 298 Fed. 803, 807, the court stated:

* * * None of the policies passed from the decedent's estate by will, descent, or distribution; nor can it be held that any of the policies were transferred in contemplation of death within the meaning of paragraph (c) of section 402, as all transfers occurred more than two years before the decedent's death. If a transfer without consideration, within the period of two years, is deemed to be in contemplation of death, unless the contrary be shown, it would seem that a transfer prior to that time would be presumed not to have been so made, and there is nothing before the court to overthrow this presumption as to transfers of any of the policies in question.

The Supreme Court has said that the dominant purpose of subdivision (c) requiring the inclusion in the gross estate of transfers in contemplation of death or intended to take effect at or after death was to reach substitutes for testamentary dispositions of property and thus to prevent the evasion of estate tax. *United States* v. *Wells*, 283 U. S. 102, 116; *Milliken* v. *United States*, 283 U. S. 15; *Nichols* v. *Coolidge*, 274 U. S. 531, 542.

The legal conception of policies of life insurance as property is firmly established. *Frick* v. *Lewellyn, supra*.

The petitioners also argue that to include the proceeds of the assigned policies in the gross estate would be contrary to the provisions of the Constitution of the United States. We are of the opinion that there is no merit in this contention. See *Chase National Bank* v. *United States, supra*.

We are of the opinion that the respondent did not err in including the proceeds of these three policies in the gross estate of the decedent.

The final question in issue in this proceeding is whether the respondent erred in not allowing proper credit against the Federal estate tax for state inheritance and estate taxes. The parties have stipulated that the petitioners paid the State of Vermont state inheritance taxes aggregating $63,064.29. In the petition it is alleged that the respondent also allowed only $2,102.84 representing the transfer tax paid to the State of New York, whereas proof of credit was filed with the respondent in the amount of $2,122.84. An inspection of the deficiency notice would indicate that the correct amount was $2,122.84. Proper credit will be allowed in the final settlement of the deficiency.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*